UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | NO. CR-05-6016-EFS |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| TROY ANTHONY PESINA, | |
| Defendant. | |

A hearing was held in the above-captioned matter on September 6, 2005. The Defendant Troy Anthony Pesina appeared, represented by Anne Wahlstrom. Assistant United States Attorney Jane Kirk appeared on behalf of the Government. Before the Court was Defendant's Motion to Dismiss Indictment, (CR-05-6016-EFS: Ct. Rec. 14). After reviewing the submitted materials and relevant case law and hearing oral argument, the Court was fully informed. This Order serves to supplement and memorialize the Court's oral Order granting the Defendant's dismissal motion.

**A. Background**

Previously, on May 13, 2003, Mr. Pesina was charged with the felony of Possession of a Firearm by Prohibited Person in violation of 18 U.S.C. § 922(g)(1). (CR-03-6027, Ct. Rec. 1.) On October 10, 2003, Mr. Pesina entered a plea of guilty to the Indictment, (CR-03-6027, Ct. Recs. 21 &

ORDER ~ 1

22). Thereafter, on December 19, 2003, the Defendant was sentenced to a term of twenty-four months and placed on two years of supervised release. (CR-03-6027, Ct. Rec. 28.) On April 13, 2005, Mr. Pesina's supervised release was revoked and he was sentenced to a three-month term of imprisonment and placed on 21 months of supervised release, with a condition of release requiring Mr. Pesina to serve three months in the Franklin County Work Release Program, if available.[1] (CR-03-6027, Ct. Rec. 42.)

On May 18, 2005, Mr. Pesina was released from custody in the Benton County Jail and placed into the Franklin County Work Release Program. On May 24, 2005, Mr. Pesina requested and was given a pass from work release to visit the Department of Motor Vehicles and the Social Security Administration to seek employment, and was ordered to return to the facility no later than 5:00 p.m. on May 24, 2005. Mr. Pesina did not return to the work release facility at 5:00 p.m. and his absence was reported to the United States Marshal Service on May 26, 2005. Mr. Pesina was subsequently arrested.

On June 14, 2005, Mr. Pesina was indicted under 18 U.S.C. § 751(a) with Escape from Custody. The Indictment charges:

> That on or about May 24, 2005, in Franklin County, in the Eastern District of Washington, the defendant, TROY ANTHONY

---

[1] The U.S. Probation Office informed the Court the Franklin County Work Release Program is funded both by the Bureau of Prisons and a portion of a resident's wages. The residents are allowed to leave the facility, subject to approval and time limitations, for work, for health-related purposes, and to obtain housing following release.

ORDER ~ 2

PESINA, did knowingly and wilfully escape from custody of the Franklin County Work Release Program, an institutional facility in which he was lawfully confined at the direction of the Attorney General by virtue of a judgment and commitment of the United States District Court for the Eastern District of Washington upon conviction for Revocation of Probation or Supervised Release, in violation of Title 18, United States code Section 3583(e), in violation of Title 18, United States code 751.

**B.  Analysis**

The Defendant asks the Court to dismiss the Indictment on the grounds the Indictment fails to allege an offense under 18 U.S.C. § 751(a) because (1) the Defendant was not in "custody" under the statute and (2) the Indictment does not charge that he was confined by virtue of a felony, misdemeanor, or any conviction.  The Government opposes the motion, contending the Court's order that Mr. Pesina participate in the Franklin County Work Release Program constitutes "custody" and "confinement by virtue" of a felony or conviction.

1. <u>"Custody" under 18 U.S.C. § 751(a)</u>

The Court finds the Defendant was not in "custody" as the term is used in 18 U.S.C. § 751(a).  Section 751(a) provides:

> (A) Whoever [1] *escapes* or attempts to escape [2] from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any *custody under or by virtue of any process issued under the laws of the United States by any court*, judgment or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, [3] *if the custody or confinement is by virtue of* an arrest on a charge of felony, or *conviction of any offense*, be fined under this title or imprisoned not more than five years, or both; or if the custody or confinement is for extradition, or for exclusion or expulsion proceedings under the immigration laws, or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined under this title or imprisoned not more than one year, or both.

ORDER ~ 3

18 U.S.C. § 751(a) (emphasis added). In *United States v. Baxley*, 982 F.2d 1265, 1270 (9th Cir. 1992), the Ninth Circuit commented upon the term "custody" as used in § 751(a). The defendant in *Baxley* was released pending trial with a special condition that he reside in a halfway house. The defendant did not return to the halfway house and was charged with escape under 18 U.S.C. § 751(a). The Ninth Circuit held the defendant was not "in custody" under § 751(a). *Id.* at 1270. The Ninth Circuit noted "custody" is a term that varies when used in different contexts and found the defendant's pretrial release conditions more analogous to probation rather than to custody given that he was allowed to go to work and leave the facility as long as he logged the time, purpose, and duration of his trips. *Id.* at 1269. The Ninth Circuit added, "[i]f an individual violates probation, he is not tried for escape; rather, his probation is revoked, and he can be indicted for escape only if he thereafter fails to report for custodial incarceration." *Id.* at 1269-70.

The Government submits *Baxley* is distinguishable from the facts at hand because *Baxley* involved a defendant who absconded during pretrial release, not following conviction. However, the Court does not understand the Ninth Circuit to have relied upon the distinction between pre-trial and post-conviction; rather, the Ninth Circuit focused on the type of "confinement" the defendant was ordered to serve. For instance, if the defendant had been detained prior to trial and absconded, it appears the Ninth Circuit would have found the defendant had been in "custody" under § 751(a).

ORDER ~ 4

In support of its opposition, the Government relies on *United States v. Rocha-Leon*, 187 F.3d 1157 (9th Cir. 1999). However, *Rocha-Leon* is distinguishable, even though the defendant was located in a half-way house, because the defendant was still serving a court-ordered term of imprisonment following revocation of supervised release. The defendant was located in the half-way house simply because the Bureau of Prisons had designated the defendant's place of confinement in the half-way house. Here, however, the Court had ordered the Defendant to imprisonment for three months, and then following serving these three months in "custody," the Court ordered the Defendant to serve three months in the Franklin County Work Release Program as a special condition to supervised release.

The Court finds *United States v. Fico*, 16 F. Supp. 2d 252, 255 (W.D.N.Y. 1998), to be the most analogous case and finds the district court's analysis cogent. In *Fico*, the district court analyzed 18 U.S.C. § 751(a) to determine the grade of a supervised release violation. In *Fico*, the defendant's supervised release included a condition that he was to reside in a community corrections center. *Id.* at 253. The defendant failed to return to the center and an arrest warrant was issued. *Id.* Thereafter, the defendant plead guilty to violating a term of his supervised release, and at the supervised release sentencing hearing, the court had to determine whether the defendant's violation was a Grade B or Grade C violation. *Id.* at 253-54. The court determined the defendant's conduct did not violate § 751(a) because the defendant was on supervised release and no longer in custody and, therefore, his conduct constituted a violation of the terms of supervised release and

ORDER ~ 5

nothing more; accordingly, the court found such conduct did not constitute a Grade B violation, which is defined as "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." *Id.* at 253 (quoting U.S.S.G. § 7B1.1(a)(2)).

Similar to the district court in *Fico*, the Court finds a defendant is not in "custody" when he is confined in a half-way house as a condition of his supervised release. The Court finds this ruling consistent with the following principles: (1) a violation of supervised release is not a misdemeanor or conviction, *see United States v. Green*, 797 F.2d 855, 858 (10th Cir. 1986), (2) the restrictions at a half-way house are significantly less than those at a "custodial" facility, *see Baxley*, 982 F.2d at 1269, and (3) the purpose behind § 751(a) is to reduce the likelihood of escape from official custody, which often involves violent and menacing behavior, creating a risk to the guards and custodians, *see United States v. Brown*, 333 U.S. 18, 21 n.5 (1948). If the Defendant had absconded during the three-month period he was imprisoned by the Court following revocation of his supervised release, the Defendant would have been in "custody" under § 751(a). However, the Defendant's stay at the Franklin County Jail Work Release Program was a supervised release special condition and at the facility the Defendant could leave, subject to approval, for work and health-related reasons. *See Baxley*, 982 F.3d at 1269. Accordingly, the Court concludes the Defendant was not in "custody" as the term is used in § 751(a). For the above reasons, the Court grants the Defendant's motion because a

ORDER ~ 6

necessary element -"custody" - is missing and the Indictment cannot be corrected.

 2. <u>"Confined by virtue" of a felony, misdemeanor, or any conviction</u>

 In addition, the Court finds the Indictment *as written* fails to allege the essential third element - confinement by virtue of a felony - however, unlike the above omission, this error could be remedied by the Government.

 An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." F<small>ED</small>. R. C<small>RIM</small>. P. 7 (c)(1). An indictment "is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003) (quoting *United States v. Bailey*, 444 U.S. 394, 414 (1980); *Hagner v. United States*, 258 U.S. 427 (1932)).

 The Indictment alleges the Defendant "was lawfully confined at the direction of the Attorney General by virtue of a judgment and commitment of the United States District Court for the Eastern District of Washington upon conviction for Revocation of Probation or Supervised Release." (Ct. Rec. 1.) The Court agrees with the Defendant that a supervised release violation under 18 U.S.C. § 3583(e) is not a felony, misdemeanor or criminal conviction, but rather only results in a revocation or extension of a defendant's term of supervised release. *See United States v. Green*, 797 F.2d 855, 858 (10th Cir. 1986). Yet, even though a supervised release violation is not in and of itself a

ORDER ~ 7

misdemeanor or felony, the Ninth Circuit did find in *United States v. Patterson*, 230 F.3d 1168 (9th Cir. 2000), that confinement following revocation of supervised release is "by virtue" of the original conviction. The Court agrees with the Ninth Circuit's decision that "punishment" imposed by the court after a supervised release violation is "by virtue" of the original conviction.[2] In addition, the Government conceded the Indictment does not specifically identify the revocation of supervised release as arising from conviction of a felony, misdemeanor, or other offense. The Court finds this omission fatal and that it is not sufficient to infer, as the Government suggests, that the Indictment reflects the confinement is by virtue of a conviction for a felony simply because one is placed on supervised release only after a conviction. Yet, the Court finds such omission could be corrected by the Government by simply amending the Indictment to reflect the wording used in the indictment in *Patterson*, 203 F.3d at 1169: "that Patterson was confined in a correction center by virtue of a conviction for [a specified felony]."

Accordingly, **IT IS HEREBY ORDERED:** Defendant's Motion to Dismiss Indictment, **(Ct. Rec. 20),** is **GRANTED**. The Indictment is **DISMISSED WITH PREJUDICE**, and the September 26, 2005, trial is **STRICKEN.**

As a result, Defendant's Motion to Compel Grand Jury Transcripts, **(Ct. Rec. 27),** Defendant's Motion for Discovery, **(Ct. Rec. 25),** and

---

[2] However, this does not equate to a finding that a condition of supervised release requiring residence in the Franklin County Work Release Program for three months is "custody." *See discussion above.*

ORDER ~ 8

Defendant's Motion to Disclose Evidence Pursuant to Fed. R. Evid. 404 & 609, **(Ct. Rec. 23),** are **DENIED AS MOOT.**

 **IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and to provide copies to all counsel, the U.S. Probation Office, the U.S. Marshal, and the Jury Administrator.

 **DATED** this ___8th___ day of September, 2005.

        S/ Edward F. Shea
         EDWARD F. SHEA
       United States District Judge

Q:\Criminal\2005\6016.dismiss.wpd

ORDER ~ 9